UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN
_____

BCR TRUCKING, LLC,

        Plaintiff,

        v.                                    Case No. 06-CV-901

PACCAR, INC., and
COLLINS-SORRENTINO, INC.,

        Defendants.
_____

**ORDER**

Plaintiff, BCR Trucking, LLC, ("BCR") originally filed this action in the Dodge County Circuit Court (Wisconsin). BCR's complaint raises three claims against the defendants, Paccar, Inc., ("Paccar") and Collins-Sorrentino, Inc., d/b/a Wisconsin Kenworth ("Wisconsin Kenworth"), arising out of BCR's purchase of a new Kenworth truck from Wisconsin Kenworth. BCR's first and second claims were asserted against Paccar under the Wisconsin Lemon Law, Wis. Stat. § 218.0171. BCR's third claim was asserted against Paccar and Wisconsin Kenworth for breach of express and implied warranties. On August 17, 2006, the defendants removed the action based upon diversity jurisdiction, and on September 14, 2006, BCR filed a motion to remand pursuant to 28 U.S.C. § 1447(c) because one of the defendants, Wisconsin Kenworth, is a Wisconsin corporation. The defendants argue that Wisconsin Kenworth's citizenship should be disregarded for the purpose of determining whether diversity jurisdiction is proper because BCR fraudulently joined Wisconsin Kenworth in this action to defeat diversity jurisdiction. For the reasons

stated below, the court finds that the defendants have not shown that Wisconsin Kenworth has been fraudulently joined as a party defendant, therefore, the court is obliged to grant the plaintiff's motion and remand the case back to the Dodge County Circuit Court from which it was removed.

## BACKGROUND

The parties dispute the date when the purchase of the truck was completed. BCR asserts that the Motor Vehicle Purchase Contract ("purchase contract") was executed and binding on July 1, 2004, however, the defendants assert that the purchase contract was not executed until July 2, 2004, when BCR signed a hard copy of a corrected purchase contract. The relevant facts are as follows.

On July 1, 2004, a member and manager of BCR spoke via telephone with a representative of Wisconsin Kenworth regarding the purchase of a new Kenworth truck. During the conversation, BCR and Wisconsin Kenworth agreed upon a purchase price for the truck, and BCR paid a $1,000 deposit with a credit card via telephone. (Coughlin Aff. ¶ 2; Ex. A; Summers Aff. Exs. A and B.) Wisconsin Kenworth also sent BCR a purchase contract, which BCR received, signed, and returned to Wisconsin Kenworth via facsimile. (Coughlin Aff. ¶ 3, Ex. A; Summers Aff. Ex. B.) The Wisconsin Kenworth representative also signed the purchase contract on July 1, 2004, a few minutes after receiving the contract back from BCR. (Summers Aff. Ex. B; Defs.' Resp. Br. 8.) When BCR signed the purchase contract and paid the deposit on July 1, 2004, BCR understood that it purchased the truck and was bound by the terms of the contract. (Coughlin Aff. ¶ 4.)

The defendants, however, understood that the contract signed by BCR on July 1, 2004, was only an initial draft of the purchase contract that merely enabled Wisconsin Kenworth to hold the truck for BCR, and that the purchase contract was not fully executed until July 2, 2004, when the Wisconsin Kenworth representative delivered the truck to BCR and presented BCR with a complete hard copy of the purchase contract and several other documents. (Summers Aff. ¶ 2.) The purchase contract signed by BCR on July 2, 2004, included the previously omitted second page of the contract and a $4 price correction. (Summers Aff. ¶¶ 2 and 5, Ex. C; Coughlin Aff.¶ 7, Ex. B.) The Wisconsin Kenworth representative also provided BCR with a Wisconsin Title & License Plate Application for signature. The application listed the "Date Vehicle Purchased" as July 1, 2004, and the "Date Delivered" as July 2, 2004. (Coughlin Aff. Ex. C.) Finally, the Wisconsin Kenworth representative presented a Kenworth Truck Company Warranty Agreement ("manufacturer warranty") to BCR for signature. (Summers Aff. Ex. E.) BCR had not seen a copy of the manufacturer warranty until July 2, 2004. (Coughlin Affidavit ¶ 11.) The manufacturer warranty contains an express warranty and a disclaimer. The manufacturer warranty states that "Kenworth Truck Company and the selling Kenworth Dealer [Wisconsin Kenworth] make no other warranties, express or implied, and make NO WARRANTY OF MERCHANTABILITY OR FITNESS FOR A PARTICULAR PURPOSE." (Summers Aff. Ex. E.)

**ANALYSIS**

The Seventh Circuit first addressed the doctrine of fraudulent joinder in *Poulos v. Naas Foods, Inc.*, 959 F.2d 69, 73 (7th Cir. 1992) ("This court has never before addressed fraudulent joinder . . . ."). To show fraudulent joinder, "[t]he defendant must show that, after resolving all issues of fact and law in favor of the plaintiff, the plaintiff cannot establish a cause of action against the in-state defendant." *Poulos*, 959 F.2d at 73. "Fraudulent joinder occurs either when there is no possibility that a plaintiff can state a cause of action against nondiverse defendants in state court, or where there has been outright fraud in plaintiff's pleading of jurisdictional facts." *Hoosier Energy Rural Elec. Coop. Inc. v. Amoco Tax Leasing IV Corp.*, 34 F.3d 1310, 1314-15 (7th Cir. 1994) (quoting *Gottlieb v. Westin Hotel Co.*, 990 F.2d 323, 327 (7th Cir. 1993)). "At the point of decision, the federal court must engage in an act of prediction: is there any reasonable possibility that a state court would rule against the non-diverse defendant?" *Poulos*, 959 F.2d at 73. The removing defendant bears a "heavy burden" to establish fraudulent joinder. *Id.* If the removing defendant fails to meet its heavy burden of proving that the plaintiff has no reasonable possibility of success, the court must remand the case back to state court based on a lack of complete diversity. *See, e.g., County of Cook v. Philip Morris, Inc.*, 1997 U.S. Dist. LEXIS 16581, 1997 WL 667777, *5 (N.D. Ill. Oct. 17, 1997).

Here, the defendants do not allege outright fraud, but rather, they allege that there is no possibility that BCR may succeed on its breach of express and implied

warranties claim against in-state defendant Wisconsin Kenworth. BCR's claim against Wisconsin Kenworth arises out of Wisconsin Kenworth's alleged breach of implied warranties given to BCR at the time BCR purchased the truck. (Compl. ¶¶ 18-20.) To avoid remand, the defendants must show that BCR has no possibility of success against Wisconsin Kenworth on this claim. The defendants assert that BCR has no possibility of success on this claim because the manufacturer warranty signed by BCR on July 2, 2004, disclaimed all warranties, express or implied, including warranties of merchantability and fitness for a particular purpose. (Summers Aff. Ex. E.)

BCR argues that it has a legitimate breach of implied warranties claim against Wisconsin Kenworth which, at the very least, has a possibility of success and survives the test for fraudulent joinder. BCR asserts that because it signed the manufacturer warranty the day after it purchased the truck, under Wisconsin law, BCR did not effectively waive the implied warranties.

Under Wisconsin law, implied warranties arise in the contract for the sale of goods unless the implied warranties are excluded or modified. *See* Wis. Stat. §§ 402.314 and 402.315. The exclusion or modification of implied warranties is governed by Wis Stat. § 402.316, which provides that in order to exclude or modify the implied warranties of merchantability or fitness, the exclusion must be "by a writing and conspicuous." Wis. Stat. § 402.316(2). Here, BCR asserts that it did not effectively waive any implied warranties because the disclaimer was not specifically

referenced in the purchase contract; rather, it was included in the manufacturer warranty provided to BCR the day after the sale of the truck.

The Supreme Court of Wisconsin in *Taterka v. Ford Motor Co.*, 86 Wis. 2d 140, 271 N.W.2d 653 (1978), held that a disclaimer of implied warranties is ineffective if it is made after the sale of an automobile. See *id.* at 149, N.W.2d at 656-57. The court in *Taterka* noted that:

> One of the purposes for the disclaimer requirement is to protect the buyer from unexpected and unbargained language. Sec. 402.316, Stats., official U.C.C. Comment. This purpose would be defeated if a manufacturer could disclaim implied warranties after the contract for sale has been entered into and at a time when the automobile is delivered.

*Id.* at 149, N.W.2d at 656-57. Accordingly, BCR asserts that under the holding in *Taterka*, the disclaimer in the manufacturer warranty is ineffective because the warranty was signed on July 2, 2004, after the sale had been entered into on July 1, 2004.

The defendants contend that the disclaimer was effective because the purchase contract was not fully executed on July 1, 2004. Instead, the July 1, 2004 version of the purchase contract was merely an initial draft. In support of this position, the defendants point out that although BCR signed and faxed a copy of the purchase contract to Wisconsin Kenworth on July 1, 2004, and Wisconsin Kenworth also signed the contract on July 1, 2004, Wisconsin Kenworth never communicated to BCR that it accepted BCR's offer. (Summers Aff. ¶ 6.) Additionally, the purchase contract signed by BCR on July 1, 2004, was corrected in the July 2, 2004 contract to remove a $4 fee, and a complete hard copy of the finalized purchase contract and

other documents were delivered to BCR along with the truck on July 2, 2004. (Summers Aff. ¶ 7, Ex. C.) Therefore, the defendants argue, the contract was not fully executed on July 1, 2004. Rather, the only binding copy of the contract was the complete and corrected version of the contract signed on July 2, 2004. Accordingly, under the Supreme Court of Wisconsin's holding in *Taterka*, the warranties were effectively disclaimed when BCR signed both the finalized version of the purchase contract and the manufacturer warranty on July 2, 2004.

BCR argues that the July 1, 2004 version of the contract was binding. In support of this position, BCR notes that on July 1, 2004, BCR signed a copy of the purchase contract, faxed the contract back to Wisconsin Kenworth, and made a $1,000.00 deposit for the purchase of the truck with a credit card via telephone. (Coughlin Aff. ¶ 2; Ex. A.) Additionally, a Wisconsin Kenworth representative also signed the purchase contract on July 1, 2004, a few minutes after receiving the faxed contract back from BCR. (Summers Aff. Ex. B; Defs.' Resp. Br. 8.) In light of these actions, BCR asserts that, under Wisconsin law, the purchase contract was executed and became binding when BCR signed the purchase contract and paid the deposit on July 1, 2004. Specifically, under Wisconsin Administrative Code § TRANS 139.05(1)(b), a motor vehicle purchase contract shall be executed whenever the dealer licensee accepts a down payment or deposit from a prospective retail purchaser. Wis. Admin. Code § TRANS 139.05(1). Furthermore, Wisconsin courts have found that the purchase of a motor vehicle occurs when the purchase contract is signed and the dealer accepts a down payment or deposit. *See, e.g.,*

*Begalke v. Sterling Truck Corp. and Freightliner*, LLC, 437 F. Supp. 2d 847, 850 (W.D. Wis. 2006) (holding that a purchase occurred when the plaintiffs signed the purchase contract and the dealer accepted down payment at the plaintiffs' home, and the contract obligated the plaintiffs to take delivery of the vehicle and to pay the remainder of the purchase price at the time of delivery); *Henry ex rel. Weis v. General Casualty Co. of Wisconsin*, 225 Wis. 2d 849, 857, 593 N.W.2d 913, 917 (Wis. Ct. App. 1999) (holding that a motor vehicle purchase contract is executed when the dealer accepts a down payment or deposit).

BCR also notes that the contract signed on July 1, 2004, included language at the top of the document which stated: "THIS IS AN OFFER TO PURCHASE THAT WILL BECOME A BINDING MOTOR VEHICLE PURCHASE CONTRACT IF ACCEPTED BY THE DEALER." (Coughlin Aff. Ex. A; Summers Aff. Ex. B.) Further, above the signature line on the contract it read:

> As a deterrent to purchaser failing to take delivery on the vehicle as herein provided, you agree that if you do not accept delivery, you shall, at dealer's option, forfeit to dealer, as a penalty, _5_ % (not to exceed 5%) of the cash price of the vehicle as authorized by Section 218.0141 Wisconsin Statutes. Dealer retains the right to bring action for actual damages caused by breach of this contract, in lieu of the above penalty.

(*Id.*) Given the language of the contract, the fact that BCR made a $1,000 deposit for the purchase of the truck, signed a copy of the contract, faxed the contract back to Wisconsin Kenworth, and a Wisconsin Kenworth representative accepted BCR's offer price by also signing the purchase contract on July 1, 2004, (Summers Aff.

Ex. B; Defs.' Resp. Br. 8), BCR asserts that the evidence supports a conclusion that the contract signed on July 1, 2004, was binding.

The defendants, however, also assert that even if the purchase contract signed by BCR on July 1, 2004, was binding, the contract excluded all express or implied warranties because the "Warranty Information" section of the contract directs the parties to "Refer to separate document for coverages and exclusions," and indicates that BCR would receive the "New Vehicle Manufacturer Warranty." (Coughlin Aff. Ex. A; Summers Aff. Exs. B and E.) The defendants assert that this section of the purchase contract specifically refers to the manufacturer warranty, received and signed by BCR on July 2, 2004, which explicitly disclaims all warranties, express or implied, including warranties of merchantability and fitness for a particular purpose. (Summers Aff. Exs. B and E.) Therefore, the defendants argue, BCR disclaimed any implied warranties when it signed the July 1, 2004 version of the purchase contract with this notice. The defendants also state that BCR could have asked to review the manufacturer warranty which disclaims the warranties before signing the July 1, 2004 version of the contract, however, BCR chose not to. Thus, according to the defendants, BCR's decision to not review the manufacturer warranty until July 2, 2004, should not affect the validity of the disclaimer.

BCR asserts that the language of the purchase contract signed on July 1, 2004, does not meet the requirements under Wisconsin law to exclude the implied warranties. For example, Wisconsin Civil Jury Instruction 3205 states that a seller

may exclude or modify implied warranties, however, any written exclusion or modification must be called to the attention of the buyer at the time of the sale. *See id.* BCR asserts that the general reference to exclusions and the manufacturer warranty does not qualify as an effective disclaimer of implied warranties under Wisconsin Civil Jury Instruction 3205 and Wis Stat. § 402.316. BCR points out that the purchase contract signed on July 1, 2004, contains a section marked "Dealer Warranty Information" which was left blank by Wisconsin Kenworth. (Coughlin Aff. Ex. A; Summers Aff. Ex. B.) This section of the purchase contract specifically includes a box that indicates that the dealer disclaims implied warranties. The section reads: "AS-IS NO WARRANTY. DEALER DISCLAIMS ALL WARRANTIES INCLUDING IMPLIED WARRANTIES OF MERCHANTABILITY AND FITNESS FOR A PARTICULAR PURPOSE." (*Id.*) BCR asserts that in order for Wisconsin Kenworth to have effectively disclaimed implied warranties, Wisconsin Kenworth was to have checked the box next to this section. Because Wisconsin Kenworth did not check this box, BCR asserts that Wisconsin Kenworth did not disclaim the implied warranties and, therefore, remained liable to BCR under the implied warranties.

Finally, the defendants also assert that BCR's breach of implied warranties claim against Wisconsin Kenworth is inconsistent with BCR's Lemon Law claims. Under Wis. Stat. § 218.0171(2)(a), Lemon Law claims must be based upon nonconformities in violation of an express warranty. *See id.* According to the defendants, the manufacturer warranty provided an express warranty in exchange for Paccar and Wisconsin Kenworth disclaiming all warranties, express or implied,

including warranties of merchantability and fitness for a particular purpose. (Summers Aff. Ex. E.) Therefore, BCR's first two Lemon Law claims rely upon the express warranty provided in the manufacturer warranty, however, BCR's third claim, breach of implied warranties, relies upon the invalidity of the disclaimer in the manufacturer warranty. The defendants assert that this inconsistency in BCR's pleadings supports a conclusion that Wisconsin Kenworth was fraudulently joined.

However, BCR contends that the express warranty was not provided in exchange for the waiver of implied warranties; rather, the express warranty was provided as part of the purchase contract signed on July 1, 2004, as indicated by the checkmark in the box next to "New Vehicle Manufacturer Warranty." (Coughlin Aff. Ex. A; Summers Aff. Ex. B.) In light of the language on the purchase contract, BCR asserts that it reasonably understood that it had purchased the manufacturer warranty as part of the purchase contract, and reasonably believed that Wisconsin Kenworth was not a party to the manufacturer warranty, because the "Manufacturer Warranty Information" section states: "Dealer is not a party to any manufacturer warranty." (*Id.*) Although the language of the manufacturer warranty states that the warranty is a contract between "you [BCR], Kenworth Truck Company, and the selling Kenworth Dealer" (*Id.*), BCR asserts that it was not provided with a copy of the manufacturer warranty until the day after the sale of the truck. If so, under the holding in *Taterka*, the disclaimer of implied warranties in the manufacturer warranty on July 2, 2004, may be invalid. In sum, according to BCR, it's breach of implied warranties claim is not inconsistent with its Lemon Law claims because the express

-11-
Case 2:06-cv-00901-JPS   Filed 11/28/06   Page 11 of 13   Document 22

warranty was included in the purchase contract, and the implied warranties were not effectively waived.

"The removal statute should be construed narrowly and any doubts about the propriety of removing a particular action should be resolved against allowing removal." *Wirtz Corp. v. United Distillers & Vintners N. Am., Inc.*, 224 F.3d 708, 715 (7th Cir. 2000). In the instant case, although the defendants may ultimately prevail on their argument that the purchase contract was not fully executed until July 2, 2004, or that the contract signed on July 1, 2004, effectively disclaimed the implied warranties by referring to the manufacturer warranty, resolving all issues of fact and law in favor of BCR, as the court must, the court is not in a position to conclude that BCR's claim against Wisconsin Kenworth has no chance of success. Given the language of the July 1, 2004 contract, the fact that BCR made a $1,000 deposit for the purchase of the truck on July 1, 2004, both BCR and Wisconsin Kenworth signed the contract on July 1, 2004, the Wisconsin Title & License Plate Application listed the "Date Vehicle Purchased" as July 1, 2004, and Wisconsin Kenworth provided BCR with the manufacturer warranty on July 2, 2004, there is a reasonable possibility that the state court could rule that the purchase contract was executed on July 1, 2004, and that it did not effectively disclaim the implied warranties. (Coughlin Aff. Exs. A and C; Summers Aff. Ex. B.) Moreover, under the Supreme Court of Wisconsin's holding in *Taterka*, the state court may conclude that the disclaimer in the manufacturer warranty signed on July 2, 2004, was ineffective. As a result, BCR's claim of breach of express and implied warranties against Wisconsin

Kenworth has a chance of success. Because the defendants have not shown that BCR has no possibility of success on the breach of express and implied warranties claim against Wisconsin Kenworth, the court is unable to conclude that Wisconsin Kenworth was fraudulently joined and, therefore, must grant BCR's motion to remand pursuant to 28 U.S.C. § 1447(c).

Accordingly,

**IT IS ORDERED** that the plaintiff's motion to remand pursuant to 28 U.S.C. § 1447(c) (Docket # 13) be and the same is hereby **GRANTED**.

The clerk of the court is directed to take all necessary steps to effectuate this remand.

Dated at Milwaukee, Wisconsin this __28th__ day of November, 2006.

BY THE COURT:

s/ J. P. Stadtmueller
J. P. Stadtmueller
U.S. District Court